UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21CR00410 AGF (DDN) |
| ) | |
| DEVON BRANCH, ) | |
| ) | |
| Defendant. ) | |

# **ORDER**

This matter is before the Court on the Defendant's pretrial motions. All pretrial motions were referred to United States Magistrate Judge David D. Noce under 28 U.S.C. § 636(b). Defendant Devon Branch filed a Motion to Suppress Statements (Doc. No. 25) and a Motion to Suppress Physical Evidence (Doc. No. 26). Defendant is charged by Indictment with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1).

In his motion to suppress evidence, Defendant seeks to suppress the firearm seized by the officers, asserting that the entry of the officers into his hotel room without a warrant and without his or his girlfriend's consent violated the Fourth Amendment and that there were no exigent circumstances justifying warrantless entry. He further seeks to suppress statements made by him on the scene, prior to the officers advising him of his *Miranda* rights, as well as statements made during a telephone conversation that he had at the police station following his arrest.

The Magistrate Judge held an evidentiary hearing on May 17, 2022, at which Officer Kyle Hunt testified and was subject to cross-examination. Officer Hunt had
`

been a law enforcement officer for nearly two years. At the time of the events, he was employed by the Hazelwood Police Department. The government also submitted two audio recordings and several video recordings of the events in question. On June 13, 2022, Judge Noce issued a Report and Recommendation ("R&R"), recommending that Defendant's motion to suppress statements made at the police station (Doc. No. 25) and motion to suppress evidence (Doc. No. 26) both be denied. (Doc. No. 39.)

Defendant filed objections to the R&R, asserting that no exigent circumstances existed for entry into the hotel room. Defendant further objects to the denial of the motion to suppress statements, asserting that the statements should be suppressed as the fruit of an unlawful arrest. (Doc. No. 47.) The government filed a response to the objections.

When a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).

The Court conducted a *de novo* review of the motion to suppress, including a review of the transcript of the hearing and the exhibits introduced at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings, except the Court finds, contrary to paragraph 11 of the R&R, that the officers did in fact advise Defendant of his rights under *Miranda* at a time period relevant to the analysis. The Court also finds that the officers did not violate Defendant's Fourth

2

Amendment rights, and further that Defendant's statements should not be suppressed, for the reasons set forth in the R&R, and as clarified and supplemented below.

Two clarifications with respect to the scope of the matters asserted before the Magistrate Judge and addressed in the R&R are necessary. First, in his motion and at the hearing, Defendant based his motion to suppress evidence only on the officers' initial entry into the hotel room. As such, very little information was presented at the hearing or in the memoranda regarding the second entry into the hotel room and the seizure of the firearm. In the R&R, the Magistrate Judge noted that Defendant did not specifically challenge the second entry, but concluded that the second entry was proper under the destruction of evidence exception to the warrant requirement. Defendant objected to this conclusion in a single sentence, with no analysis, simply stating there was no warrant or consent. Although the Court agrees that the destruction of evidence exception to the warrant requirement would apply, the Court finds that suppression is not warranted regarding the second entry into the hotel room because based on the videotape evidence, the officer had consent to enter the hotel room. The additional facts related to this conclusion will be addressed below.

With respect to the motion to suppress statements, clarification with respect to the scope of the matters before the Magistrate Judge is also necessary. Defendant made some exculpatory statements to the officers at the scene, during their initial investigation and detention outside the hotel. He also made an inculpatory statement as the officers were placing him in handcuffs. At the hearing, the parties reported that they had reached an agreement with respect to those statements, based on the government's agreement that

3

it would not seek to introduce Defendant's inculpatory statements in its case in chief. Tr. 36-37.  It appeared from the record that there was no challenge to the exculpatory statements.  As such, the Magistrate Judge did not address any of the statements made on the scene in his R&R, believing the parties had reached an agreement.  Based on the objections, however, it appears that a dispute does exist with respect to the exculpatory statements.  The Court concludes that the exculpatory statements made at the scene are not subject to suppression for the reasons stated below, again incorporating additional findings of fact in the discussion.

The additional facts upon which the Court relies are clearly established from review of the videos submitted as evidence.  The Court confirmed with the parties that they had no objection to the Court's review of the additional portions of the videos admitted as exhibits, but that were not specifically played at the hearing.

Motion to Suppress Evidence

The Court adopts paragraphs 1 – 10 of the R&R, but based on *de novo* review, specifically does not adopt paragraph 11, which asserts that the officers did not at any time advise Defendant of his *Miranda* rights.  The Court also supplements the facts as follows, to the extent not specifically addressed therein.  As set forth in the R&R, Officer Hunt and his partner, Officer Petty, were called to the hotel to investigate a "disturbance" at a hotel room at approximately 10:13 p.m.  A citizen had called 911 and reported that she heard fighting in Room 139, between a man and a woman.  The officers knocked on the door multiple times, but received no response and could not hear

4

anything. One of the hotel personnel, apparently based on overhearing the arguing, stated to the officers that the occupants had just been in the room.

Officer Hunt had received training on domestic disturbances and violence, had previously responded to calls related to domestic violence approximately 25-30 times, and knew those situations had a tendency to be very volatile and could become dangerous. Based on their training and experience, the officers were reasonably concerned that an occupant in the room might be in need of emergency assistance or protection from imminent injury. Thus, for the reasons set forth more fully in the R&R, the Court agrees that Defendant's motion should be denied, as exigent circumstances supported the initial warrantless entry into the hotel room.

Upon entry into the hotel room, the officers' reasons for concern were not dispelled. No one was present, but the room was in disarray, items appeared to have been thrown, and the water had been left running and had run onto the floor and perhaps even out into the hallway. The officers also observed, in plain sight, the loaded firearm at issue sitting on the dresser. Because of the state of the room, hotel management changed the locks on the room so that the occupants could not reenter with their keys.

As the officers and hotel management left the room, and hotel management locked the door, a hotel occupant advised the officers that the room occupants were out on the back parking lot. As further detailed in the R&R, the officers went to the back lot where they found the Defendant and his girlfriend, Ms. Dennis, arguing. Ms. Dennis' young daughter was also with her. The officers separated Defendant and Ms. Dennis, and Officer Hunt spoke with Ms. Dennis while Officer Petty spoke with Defendant. Ms.

5

Dennis advised the officers that the hotel room was rented in her name, that the firearm they saw belonged to Defendant, and that Defendant had a prior felony conviction.

Meanwhile, Officer Petty spoke with Defendant to obtain his explanation of the events. He obtained information about Defendant's identity, and advised Defendant they were concerned about the firearm they had discovered in the room. Defendant stated that the firearm was "his girl's." Officer Petty radioed the station and confirmed that Defendant was on probation. In response to Defendant's question regarding whether he was under arrest, Officer Petty specifically advised Defendant he was simply being detained while they determined what had happened. After speaking to Ms. Dennis, Officer Hunt walked to where Defendant and Officer Petty were located. Officer Hunt asked Defendant to whom the handgun in the room belonged, and he said it belonged to his "girl," that it was in her name. The officers asked whether he had somewhere he could go that night, whether there was someone he could call to pick him up. They advised Defendant they were going to detain him, that he was not under arrest, until they could find out who the gun belongs to, and they began to place him in handcuffs. Defendant then stated, spontaneously, that the gun was his. The officers then formally advised Defendant of his rights under *Miranda*, and Officer Hunt escorted Defendant from the scene.

Officer Petty remained at the hotel. Ms. Dennis and her child, and someone from hotel management were still on the back lot. Officer Petty went to look for the night manager to seek access back into the hotel room, but did not immediately find the manager. By this time, Ms. Dennis and her daughter and the person from hotel

6

management had come inside, and they all gathered outside the hotel room. Ms. Dennis asked to be able go back in the room, and the hotel manager advised that he would permit Ms. Dennis to stay in the room as it was in her name, and he unlocked the door. Ms. Dennis, her daughter and Officer Petty all entered together, and Officer Petty began to discuss the situation further with Ms. Dennis, who was still very upset, but conversed with him voluntarily. During their conversation, she confirmed the hotel was rented in her name and that the firearm was not hers, and Officer Petty seized the firearm.

It is questionable whether Defendant retained an expectation of privacy in the room at this point, as the room was in Ms. Dennis's name and Defendant had been locked out of the room for cause by hotel management. And it was hotel management that opened the door to permit Ms. Dennis, her daughter and Officer Petty to enter. But even if Defendant retained an expectation of privacy, suppression of the firearm is not warranted as Officer Petty had the consent, or at least the implied consent, of Ms. Dennis and hotel management to enter the room, and Ms. Dennis had no objection to seizure of the firearm. *See United States v. Smith*, 973 F.2d 1374, 1376 (8th Cir. 1992) (implying consent when the defendant's wife stepped aside and motioned for officers to enter); *United States v. Turbyfill,* 525 F.2d 57, 59 (8th Cir. 1975) (implying consent when the defendant's wife opened the door and stepped back to let officers enter); *see also United States v. Carter*, 378 F.3d 4584, 588 (6th Cir. 2004).

Further, the Court agrees with the conclusion in the R&R that the officers were also justified in seizing the firearm as evidence and to protect against possible imminent destruction. The officers reasonably believed that the firearm belonged to Defendant

7

and had confirmed that he had a prior felony conviction. It was also reasonable for the officers to take steps to preserve the evidence (and to protect the child from the loaded firearm), as Defendant could take steps to have his belongings retrieved from the room. Indeed, as set forth in the R&R, Defendant did take steps to have his property retrieved from the room when he made a telephone call from the station.

For these reasons, and the reasons stated in the R&R, the Court finds that Defendant's motion to suppress evidence should be denied.

Motion to Suppress Statements

The Court also agrees with the recommendation in the R&R that the motion to suppress statements be denied. As set forth more fully in the R&R and supplemented above, while the officers had Defendant and Ms. Dennis separated on the back lot, Defendant advised Officer Petty and then Officer Hunt that the firearm belonged to Ms. Dennis. After he was advised that he would be detained while they further investigated the firearm, Defendant made an inculpatory statement regarding the firearm, which statement the government does not intend to use. However, the government does seek to use the earlier exculpatory statements in which Defendant said the firearm belonged to his girlfriend.

As described above, because it appeared that the parties had an agreement with respect to the statements on the back lot, the Magistrate Judge did not address them in the R&R. While not entirely clear, it appears Defendant is objecting to the government's use of Defendant's statements that the gun belonged to his girlfriend. To the extent Defendant asserts that the statements should be suppressed as a violation of Defendant's

8

*Miranda* rights, the objection will be denied. The Court finds that the police were conducting an investigatory detention at the time Defendant stated the firearm belonged to his girlfriend. The questioning arose out of a 911 call reporting a disturbance at a hotel room late at night. The hotel room was in disarray, with the water still running onto the floor. Defendant and his girlfriend were then found, still arguing with one another, on the back lot. Officer Petty was trying to determine what had happened and get Defendant's side of the story while Officer Hunt spoke to Defendant's girlfriend, who was upset and frightened. Officer Hunt then approached where Defendant and Officer Petty were and asked who the firearm belonged to.

On these facts, the Court finds that the officers had a reasonable basis for an investigatory detention. *See United States v. Harvey*, 1 F. 4th 478, 481 (8th Cir. 2021) (Terry stop justified "only when the officer points to specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant that intrusion") (citations and internal quotations omitted); *Waters v. Madson*, 921 F.3d 725, 736-37 (8th Cir. 2019) (reasonable suspicion to detain the defendant based on a 911 call reporting a customer dispute and failure to company protocol). The questioning was brief, there was no show of physical force, and no party was physically restrained. Defendant was detained only to the extent necessary to keep him separate from Ms. Dennis and to conduct their investigation. The questioning was also reasonably related to the purpose of the detention, as they were investigating a domestic disturbance, Defendant's girlfriend advised she was frightened, and there was a loaded firearm in their hotel room, which was in disarray. As such, the officers were not required to advise

9

Defendant of his rights under *Miranda* before inquiring about the firearm. *United States v. Klein*, 13 F.3d 1182 (8th Cir. 1994) (holding that *Miranda* warnings are not required for "[g]eneral on-the-scene questioning as to facts surrounding a crime") (quoting *Miranda*, 384 U.S. at 477-78); *see also United States v. Howard*, 532 F.3d 755, 761 (8th Cir. 2008) (citation omitted).

The Court need not address the inculpatory statement Defendant made on the back lot as he was being handcuffed, as the government has agreed it would not use that statement in its case in chief.

While at the station, Defendant made a telephone call from the booking area in which he made several cryptic references to "what was in the room." Officer Hunt, who was stationed very near Defendant, believed Defendant was referencing the firearm in the hotel room, and that he was attempting to enlist someone to remove Defendant's belongings, including the firearm, from the hotel room.

Defendant objects to the Magistrate Judge's recommendation that the motion to suppress statements be denied, asserting that all of Defendant's statements are the fruit of an unlawful arrest. However, for the reasons set forth above and in the R&R, the Court disagrees. As explained above, exigent circumstances justified the initial warrantless entry into the hotel room. There they observed the room in disarray and a loaded firearm in plain sight on top of the dresser. The officers thereafter located Defendant and his girlfriend still arguing on the back lot of the hotel. She advised the officers that the firearm belonged to Defendant and that Defendant was a convicted felon and was on probation. Officer Hunt then confirmed through the police dispatcher that Defendant

was on probation. Thus, the officers had not only reasonable suspicion to detain Defendant, but had probable cause to arrest Defendant for his unlawful possession of a firearm. Defendant's girlfriend also thereafter advised that she wished to press charges for domestic assault. As such, the statements were not the fruit of an unlawful arrest.

Although Defendant does not object to admission of the statements made during the phone call on any basis other than as fruit of an unlawful arrest, the Court further notes that Defendant's statements on the telephone call were made after Defendant was advised of his rights under *Miranda*, and were not the result of any interrogation or questioning. The call was also made in an open area, and Defendant could see that Officer Hunt was close enough to hear him. As such, Defendant had no reasonable expectation of privacy. For both of these independent reasons, the statements are not subject to suppression.

Thus, after careful and independent consideration, the Court will overrule Defendant's Objections, and will adopt and sustain the thorough reasoning of Magistrate Judge Noce set forth in support of his recommended ruling, as supplemented and clarified herein.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 39] is **SUSTAINED, ADOPTED, AND INCORPORATED** to the extent stated herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements [Doc. No. 25] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [Doc. No. 26] is **DENIED**.

**IT IS FURTHER ORDERED** that this matter remains scheduled for Jury Trial on **November 7, 2022 at 9:00 a.m.**

                                                  _____
                                                  AUDREY G. FLEISSIG
                                                  UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2022.